UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICK E. TOWNER,

                                                                        DECISION and ORDER

                                        Plaintiff,

-vs-                                                                    19-CV-6638 CJS

TOWN OF COHOCTON, and all employee agents and
assigns, TOWN OF COHOCTON AMBULANCE
COMMISSION and all employee agents and assigns,
TOWN OF COHOCTON AMBULANCE DISTRICT and
all employee agents and assigns, VILLAGE OF
COHOCTON and all employee agents and assigns,
COHOCTON VALLEY AMBULANCE SERVICE INC.
and all employee agents and assigns, "JUDITH HALL"
individually, and in her official capacity, "WILLIAM
WAGGONER" individually, and in his official capacity,
"PAIGE DEMICK" individually, and in her official capacity,

                                        Defendants.
_____

INTRODUCTION

        This is an action primarily involving claims of false arrest and malicious prosecution

under 42 U.S.C. § 1983 and New York State law.  Now before the Court are applications

(ECF Nos. 19 & 21) to dismiss the Amended Complaint pursuant to Fed. R. Civ. P.

12(b)(6).  For the reasons discussed below, the applications are granted, and this matter

is dismissed.

BACKGROUND

        In connection with the pending motions the Parties have submitted various

documents besides the Amended Complaint.  Before discussing the relevant facts, the

Court must determine which documents it will consider in addressing the subject Rule

12(b)(6) motions, keeping in mind that,

> [i]n its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).   "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)

> "A matter is deemed 'integral' to the complaint when the complaint 'relies heavily upon its terms and effect.' Typically, an integral matter is a contract, agreement, or other document essential to the litigation." *Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019). "For a court to regard a document as 'integral,' 'it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document,' and '[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.'" *Clybourn v. Spiderbands LLC*, No. 18 CIV. 03688 (ER), 2018 WL 6528234, at *2 (S.D.N.Y. Dec. 12, 2018) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

*DPC New York, Inc. v. Scottsdale Ins. Co.*, No. 19 CIV. 1743 (PGG), 2020 WL 2555241, at *5 (S.D.N.Y. May 19, 2020).

Here, the Amended Complaint has no exhibits or attachments, nor does it expressly incorporate any document by reference.  However, the pleading refers to, and clearly relies heavily upon, various "documents," namely, the following: 1) a criminal complaint, dated March 29, 2018, charging Plaintiff with Criminal Mischief in the Fourth

2

Degree; 2) a surveillance video recording of the incident for which Plaintiff was arrested and charged; and 3) an order from the Town of Wayland Court dated June 14, 2019, dismissing the Criminal Mischief charge against Plaintiff.  (The Court will discuss the contents of these documents in greater detail below).

In support of their motion to dismiss the Amended Complaint, the Town of Cohocton Defendants submitted the criminal complaint and its supporting documents, as well as the surveillance video recording, for the Court to review.  Defendants maintain that such documents are "integral" to the Amended Complaint.[1]  In his response, Plaintiff mildly objects to the submission of these documents, by asserting that they "raise more questions [sic]" and "have not been subject to discovery."[2]  Plaintiff, though, has not argued that the Court cannot consider the documents, or that the documents are not integral to the pleading.  Rather, Plaintiff has submitted an additional document, namely, a copy of the order from the Town of Wayland Court, dismissing the action against him, purportedly to "complete the sequence Defendants rely upon" and show that the criminal matter was eventually dismissed.[3]  Moreover, Plaintiff refers to these same documents (the criminal complaint and exhibits, the video and the dismissal order) in his opposition papers, asserting that they support his claims.

[1] Defendant Cohocton Valley Ambulance Service alternatively indicates that to the extent the documents are not "integral" to the pleading, the Court should convert the 12(b)(6) motions into motions for summary judgment.  However, the Court declines to convert the motions since it finds that the documents are indeed integral to the Amended Complaint.

[2] *See*, Pl. Mem. of Law (ECF No. 28) at p. 3, n. 1 ("Defendants have attached exhibits to their motions which they deem 'integral' to the motion.  Plaintiff believes the matters outside the pleading raise more questions and have not been subject to discovery.  Plaintiff attaches Exhibit A [(the Town of Wayland Court's order)] as evidence of the disposition of the charges to complete the sequence Defendants rely upon.").

[3] *Id*.

In sum, the parties seem to agree that these materials outside of the pleadings are "integral" to the Amended Complaint and may be considered by the Court in connection with the pending 12(b)(6) motions.  The Court finds, in any event, that the documents are integral to the Amended Complaint.  In that regard, the criminal complaint and supporting documents are integral to the pleading since they explain the circumstances of Plaintiff's arrest and contain the allegedly false and misleading statements that Plaintiff claims caused his arrest and prosecution.  Indeed, Plaintiff repeatedly refers to these documents as proof that the persons who reported him to the police either lied or omitted key details from their statements.[4]  Similarly, the video recording is integral to the Amended Complaint, since it captures the very event for which Plaintiff was arrested and prosecuted.  Moreover, the pleading repeatedly refers to the recording, contending that it is exculpatory, and that if Defendants had disclosed the recording to the investigating police officer, Plaintiff would not have been charged or prosecuted.  Finally, the town court's dismissal order is integral to the Complaint, since it explains the basis for the dismissal of the criminal charge against Plaintiff, and since the pleading cites the order as proof that there was no probable cause for Plaintiff's arrest and prosecution.  Accordingly, in resolving the subject 12(b)(6) motion the Court has considered, in addition to the Amended Complaint, the documents just discussed, viewing them in the light most-favorable to Plaintiff. *See, Majad ex rel. Nokia Ret. Sav. & Inv. Plan v. Nokia, Inc.*, 528 F. App'x 52, 54 (2d Cir. 2013) ("We review the challenged dismissal *de novo*, construing the

---

[4] Although pleading notes that Plaintiff talked with Logsdon, it does not specifically refer to the resulting CPL § 710.30 notice attached to the criminal information.  However, the § 710.30 notice is nevertheless integral to the pleading.  Briefly, it shows that the arresting officer investigated the matter before placing Plaintiff under arrest, rather than merely relying upon what he was told by Defendants.  Further, the statement shows that Plaintiff told Logsdon the reason why he removed the straps, namely, because he felt that they were unsafe.

complaint, together with all attached and integral documents, in the light most favorable to plaintiffs."), as amended (June 25, 2013) (emphasis added).

Having made that determination, the following is a synopsis of the facts. In February 2018, Plaintiff was employed by non-party Finger Lakes Health as an emergency medical technician ("EMT"). In his capacity as an EMT, plaintiff was assigned by Finger Lakes Health to "work at and with the Town of Cohocton Ambulance Service." On or about March 21, 2018, during a work shift, Plaintiff removed straps from a medical "back board" because he felt they were "unsafe." The Amended Complaint describes the incident as follows:

> 17. Plaintiff is an employee of Finger Lakes Health ("FLH"). In February, 2018 he was assigned to work at and with the Town of Cohocton Ambulance Service and as part of those responsibilities inventories, inspected and restocked the supply and equipment lockers in the Cohocton Fire Hall.
>
> 18. In the course of this inspection, several back board straps designated for single use were found to be unsafe and unusable. Those straps were removed from service and placed in the Ambulance Commission's storage closet at the Cohocton Town Hall and an inventory of those items was provided.
>
>                                         ***
>
> 21. On or about March 21, 2018, Plaintiff discovered more unsafe straps during a routine back board and ambulance inspection.
>
> 22. Plaintiff showed [his co-worker, defendant] Paige Demick [("Demick")] the weakness of the straps. Plaintiff rendered the weak straps unusable and replaced them with straps for both ambulances.

Am. Compl. at ¶ ¶ 17-18, 21-22.

The surveillance video recording of the incident, lasting two minutes and eighteen seconds, is not overly helpful since another person, presumably Demick, is standing

between Plaintiff and the camera.  Nevertheless, the recording shows Plaintiff[5] stand on a red ambulance backboard, breaking off an orange strap and then throwing it in a trash can.  After that, Plaintiff can be seen removing additional material from the backboard and throwing it into the trash can. The video then shows Plaintiff set aside the now-strapless backboard.

On March 29, 2018, the office of the Steuben County Sheriff was contacted concerning the matter, apparently either by Defendant Judith Hall ("Hall"), the Chair of the Cohocton Ambulance Commission, or by Defendant William Waggoner ("Waggoner"), the Cohocton Fire Chief.  That same day, Waggoner executed a supporting deposition, stating:

> On March 28th, 2018 it came to my attention that some back board straps had been broken on purpose by a member of the paid ambulance service. Wendy Heskell reported to me that Paige Demick told her Rick had broke some straps on the back board because he didn't like that style.  Today around 4:30 pm I reviewed the security camera footage in the fire hall and heard and saw Rick in the video complaining about the straps and then stand on the backboard and pulled [sic] on the straps until they broke and threw them in the garbage.  This happened on March 21st, 2018 at about 9:56 am.  He broke several of the straps and then took the rest off and threw them away.  I reported it to one of the commissioners, Jeff Wise, who watched the video with me.  Jeff called Judy Hall who is the head commissioner and she came down and watched the video as well.  The Town Supervisor was contacted, who watched the video as well, and he requested that we call law enforcement.

ECF No. 19-3 at p. 4.  Also, that same day, Hall, purportedly in her capacity as the Town of Cohocton Ambulance Commission's "authorized person," executed an affidavit for the Steuben County Sheriff, indicating that property belonging to the Ambulance Commission

---

[5] The parties agree that Plaintiff is the person depicted in the recording breaking removing backboard straps.

6

had been damaged, namely, four backboard straps with a total value of $40.00.  Hall's deposition concludes with the statement:

> Other than persons authorized by me, no one had permission to enter the said premises at any time, nor did I give anyone permission or authority to cause any damage, tamper, or remove any of this property, nor did anyone else have a superior or equal right to the possession thereof.  Especially not Rick Towner.

Docket No. 19-3 at p. 7.

The next day, March 30, 2018, Demick completed a supporting deposition in which she stated in pertinent part:

> On March 21st, 2018 sometime in the morning Rick Towner and myself were working 0600-1800 shift at Cohocton Ambulance Service.  While [we] were in the ambulance bay Rick was complaining about the backboard straps.  He said that he didn't like them and he thought the [sic] were not suited to hold a heavy patient.  He laid a backboard flat on the ground and put one foot on it to hold it down and pulled up on the straps until they broke.  He broke multiple straps and then took several others off and threw them in the garbage.

ECF No. 19-3 at p. 3.

That same day, March 30, 2018, Plaintiff was contacted by Lieutenant Brian Logsdon ("Logsdon") from the Office of the Steuben County Sheriff.  Plaintiff agreed to meet with Logsdon.  According to a CPL § 710.30 notice that Logsdon completed, which is attached to the criminal information, Plaintiff gave a statement to Logsdon, indicating: "I broke the unsafe straps and thew them away." ECF No. 19-3 at p. 5.  Immediately following the interview, Logsdon arrested and handcuffed Plaintiff and charged him with Criminal Mischief in the Fourth Degree, in violation of Penal Law § 145.00, subdivision 1 ("intentionally damages property of another person").  The criminal complaint, which was supported by the previously-mentioned depositions from Hall, Waggoner and Demick,

7

stated, in pertinent part:

> On March 21st, 2018 at about 9:56 am the above named defendant, Rick Towner, did commit the offense of criminal mischief in the fourth degree in the Village of Cohocton, County of Steuben, State of New York when he intentionally broke several backboard straps and discarded them.  Said property did belong to the Town of Cohocton Ambulance Service and Rick Towner had no right to do so nor any reasonable ground to believe that he had such right to destroy such property.

ECF No. 19-3 at p. 2.

After the arrest, Plaintiff was given an appearance ticket and released. Nevertheless, the Amended Complaint alleges that Plaintiff's liberty was restricted in various ways while the criminal charge was pending against him.  In particular, the pleading alleges that Plaintiff was denied pay, his pistol permit was suspended, his firearms were confiscated, and both his Emergency Medical Technician ("EMT") certification and his New York State Security Guard license were reviewed by the State of New York.

More than a year after the arrest, on June 14, 2019, the criminal charge was dismissed by the Honorable Thomas Recktenwald ("Recktenwald"), a justice of the Town of Wayland Court. (ECF No. 29).   The order signed by Recktenwald indicates that the criminal information filed against Plaintiff was being dismissed pursuant to New York Criminal Procedure Law § 170.35, stating in pertinent part:

> ORDERED that the information be, and hereby is dismissed, and it appearing to the Court that there is not sufficient evidence to convict the defendant of any crime, it is further ORDERED that the said defendant be and hereby is discharged from custody and that his bail be and hereby is exonerated.

ECF No. 29.

8

On or about June 13, 2019, Plaintiff commenced this action in New York State Supreme Court, Steuben County, asserting claims including a claim under 42 U.S.C. § 1983.  On August 29, 2018, moving Defendants removed the action to this Court.[6]

The Amended Complaint purports to assert the following four causes of action against all named Defendants: 1) malicious prosecution; 2) false arrest; 3) violation of New York Labor Law §§ 740-741; and 4) violation of 42 U.S.C. § 1983.  Defendants have correctly pointed out that the pleading's fourth cause of action, alleging a Section 1983 claim, does not explain the legal basis for the claim.  Nevertheless, it appears from the entire pleading that Plaintiff is attempting to assert Fourth Amendment claims that essentially mirror the state-law claims for false arrest and malicious prosecution.

On January 7, 2020, the Town of Cohocton, Town of Cohocton Ambulance District, Town of Cohocton Ambulance Commission, Village of Cohocton, Hall and Waggoner (sued in both their official and individual capacities) (collectively the "Cohocton Defendants" or the "Town Defendants"), filed the subject motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Generally, the Cohocton Defendants contend that Plaintiff indisputably destroyed the subject back board straps without permission, and therefore did, in fact, commit the crime for which he was charged. Beyond that, the Cohocton Defendants contend that the pleading is deficient for myriad reasons including the following:  1) the claims against the Town of Cohocton Ambulance District, Town of Cohocton Ambulance Commission, Village of Cohocton, and the official-capacity claims against Hall and Waggoner, are duplicative of the claims against the Town of Cohocton and should be dismissed; 2) the Town of Cohocton Defendants neither

---

[6] As will be discussed further below, Demick, though named in the caption, has never been served and has not appeared in any court proceedings related to this action.

9

arrested Plaintiff nor initiated his prosecution; 3) the allegation that the statements made to the police were "lies" is conclusory and not plausible in light of the facts discussed earlier; 4) the pleading and integral documents establish probable cause for Plaintiff's arrest and prosecution; 5) the pleading fails to state a basis for municipal *Monell* liability; 6) the pleading does not allege a liberty deprivation sufficient to support a Fourth Amendment claim; 7) the pleading does not state a stand-alone Fourteenth Amendment due process claim; 8) the pleading does not allege personal involvement by Waggoner or Hall in the alleged constitutional violations; 9) even assuming a constitutional violation occurred, Waggoner and Hall are entitled to qualified immunity; 10) any alleged wrongdoing by a municipality involved a discretionary act, and hence governmental immunity applies;  11) the pleading fails to allege actionable state-law claims for false arrest or malicious prosecution; 12) the state-law claim for false arrest against Hall and Waggoner is barred by New York's one-year statute of limitations; 13) the pleading fails to state a "whistleblower claim" under New York Labor Law § § 740-741; 14) and to the extent Plaintiff is seeking punitive damages against a municipality, they are barred.

On January 9, 2020, defendant Cohocton Valley Ambulance Service ("COVAS") filed its own motion (ECF No. 21) to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  The motion joins in the arguments made by the Town of Cohocton Defendants.  Additionally, COVAS asserts the following arguments: 1) the pleading fails to state any actionable wrongdoing by COVAS; 2) the only potential tortfeasors are Waggoner, Hall and Demick, who are not affiliated with COVAS; 3) there is no agency relationship between COVAS and any other defendant; and 4) there can be no Labor Law claim against COVAS since it did not employ Plaintiff.

On February 20, 2020, Plaintiff filed a combined response (ECF No. 28) to both motions to dismiss.  The response acknowledges that Plaintiff "removed four ten dollar" straps from a backboard, but reiterates that Plaintiff felt entitled to remove/destroy the straps because he believed that they were unsafe.  The response further acknowledges that Plaintiff spoke with Lieutenant Logslow immediately prior to being arrested. Additionally, the response asserts the following points: 1) the arrest and prosecution were instigated by false, incomplete or misleading statements by Hall and Waggoner;  2) the defendants acted with actual malice, to retaliate against Plaintiff for his having previously pointed out problems with the Town's ambulance service; 3) the defendants are not entitled to qualified immunity; and 4) the pleading adequately states claims for false arrest, malicious prosecution, and a Fourth Amendment violation under Section 1983.  As already mentioned, along with his response, Plaintiff submitted a copy of the town court's order dismissing the criminal charge against him (ECF No. 29), which he maintains establishes that there was no probable cause for the arrest or prosecution.

On March 5, 2020, COVAS filed a reply (ECF No. 30), noting that Plaintiff's response fails to address COVAS's arguments for dismissal.

On March 17,  2020, the Town of Cohocton Defendants filed a reply (ECF No. 31), essentially reiterating the arguments in their moving papers.  The Town Defendants further note that Plaintiff's response fails to address their arguments concerning the Labor Law claim, duplicative claims, governmental immunity, the viability of a stand-alone Fourteenth Amendment due process violation or punitive damages.   The Town Defendants therefore maintain that Plaintiff should be deemed to have abandoned the claims relating to those arguments.

The Court had scheduled oral argument, but due to the Covid-19 Pandemic the Court, without objection, canceled argument and deemed the matter submitted on the papers.  The Court has carefully considered the submissions.

DISCUSSION

The Claim Against Demick is Dismissed Pursuant to Fed. R. Civ. P. 4(m)

As a preliminary matter, the Court dismisses the action as against Demick without prejudice pursuant to Fed. R. Civ. P. 4(m).  In that regard, upon reviewing the movants' papers, the Court observed that neither motion was filed on Demick's behalf, which prompted the Court to further review the docket, and, upon seeing no indication that Demick had ever been served, to contact counsel for the parties.  Having received input from all counsel, it appears that Demick was never served, and that Plaintiff's counsel mistakenly assumed that counsel for the moving parties had accepted service on Demick's behalf.[7]  Beyond this, Plaintiff's counsel indicates that Demick was not responsible for Plaintiff's alleged injuries in any event.  Nevertheless, the 90-day period for serving Demick has long since expired and the Court sees no good cause for an extension, therefore the action is dismissed as against Demick, without prejudice.

Motions Under Rule Fed. R. Civ. P. 12(b)(6)

The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937,

---

[7] Demick was not employed by any of the defendants who have appeared in this action.

173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.' ") (quoting *Iqbal* ).

<u>Plaintiff Has Abandoned Certain Claims</u>

Before proceeding further, the Court finds that Plaintiff has abandoned several of his claims by failing to dispute the movants' arguments.  In that regard, "[a] district court may, and generally will, deem a claim abandoned when a plaintiff [represented by counsel][8] fails to respond to a defendant's arguments that the claim should be dismissed." *Jennings v. Hunt Companies, Inc*., 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (collecting cases, citation and internal quotation marks omitted); *see also, Rugg v. City of New York*, No. 18 CIV. 9762 (LAP), 2019 WL 3242493, at *7 (S.D.N.Y. July 8, 2019) ("Plaintiff does not address his fifth and sixth causes of action in his response letter to the City's motion to dismiss, therefore the State and City hostile work environment claims are deemed abandoned.").[9]

---

[8] *But see, United States v. Simmons*, No. 17-CR-127 (KMW), 2019 WL 3532113, at *6 (S.D.N.Y. Aug. 2, 2019) ("Where a <u>pro se</u> petitioner fails to respond to defendant's argument that a claim should be dismissed, however, the Court has an obligation to nevertheless consider the claim on its merits. *See, e.g., Rush v. Canfield*, 649 F. App'x 70, 71 (2d Cir. 2016) (holding that district court erred by determining that pro se plaintiff abandoned claims by failing to respond to defendants' argument that those claims should be dismissed).").

[9] *Also, cf. Jackson v. Fed. Exp*., 766 F.3d 189, 196 (2d Cir. 2014)  ([T]there is a relevant distinction to be drawn between fully unopposed and partially opposed motions for summary judgment in counseled cases. . . .  [A] partial opposition may imply an abandonment of some claims or defenses. Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others. Pleadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them.  . . .  Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended.").  The Court here draws such an

Plaintiff here has responded to Defendants' arguments only sparsely and selectively.   Specifically, Plaintiff's 12-page response really only discusses three defendants – Hall, Waggoner and the Town of Cohocton – and three claims – the claims for false arrest and malicious prosecution under state law, as well as a "Fourth Amendment violation under 42 U.S.C. § 1983" based on both false arrest and malicious prosecution.  Plaintiff's opposition brief does not discuss the other defendants or explain how they could be liable in this action, nor does it dispute the Town of Cohocton Defendants' arguments that the claims against the municipal subdivisions, and against Hall and Waggoner in their official capacities, are redundant of the claims against the Town.   Nor does it discuss the New York Labor Law claim, or any stand-alone 14th Amendment Due Process claim under Section 1983.  Plaintiff's response also fails to address the argument concerning the unavailability of punitive damages against a municipality.  Finally, Plaintiff's response fails to respond to COVAS' argument or to offer any explanation for how COVAS could be found liable in this action.

Consequently, the Court finds that the following claims are abandoned and may be dismissed: 1) the claims against the Village of Cohocton, Town of Cohocton Ambulance Commission and Town of Cohocton Ambulance District, as well as the claims against Hall and Waggoner in their official capacities; 2) the claim pursuant to New York Labor Law § § 740-741; 3) any stand-alone 14th Amendment Due Process claim; 4) any claim for punitive damages against the Town of Cohocton;[10] and 5) all claims against COVAS.

---

inference from the totality of the circumstances.

[10] It does not appear that Plaintiff is actually seeking punitive damages against a municipal defendant, but to the extent that he may be, the claim is dismissed.

In addition to these claims having been abandoned, the Court notes that such claims would fail on their merits in any event, which is presumably why Plaintiff did not contest them.  For example, it is well settled that "[u]nder New York law, departments which are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot sue or be sued." *Casaccia v. City of Rochester*, No. 6:17-CV-06323-MAT, 2018 WL 324420, at *4 (W.D.N.Y. Jan. 8, 2018).  It is also clear that "[c]laims against individual defendants in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant." *Doyle v. City of Corning*, No. 14-CV-6507-CJS-MWP, 2019 WL 360759, at *4 (W.D.N.Y. Jan. 29, 2019) (citations omitted).  Further, under New York law a plaintiff cannot maintain a retaliation claim under Labor Law § 740 against an entity that did not employ him, and none of the Defendants employed Plaintiff. *See, Freese v. Willa*, 89 A.D.3d 795, 796, 932 N.Y.S.2d 512, 514 (2011) ("[T]he Supreme Court properly held that the defendants . . .  were entitled to dismissal of the first cause of action [under Labor Law § 740] insofar as asserted against them because the plaintiff had no employee-employer relationship with any of these defendants.").  Also, it appears that the false arrest and malicious prosecution claims are properly raised under the Fourth Amendment, not the Fourteenth Amendment's Due Process clause. *See, e.g., Woods v. City of Syracuse*, No. 5:15-CV-027-BKS-ATB, 2017 WL 11567919, at *10 (N.D.N.Y. Feb. 1, 2017) ("Since the Fourth Amendment covers Plaintiff's substantive Section 1983 claims, his unspecified due process claim must be dismissed as duplicative.") (collecting cases).[11]  Additionally, it is well settled that punitive damages cannot be awarded against

---

[11] *See also, Lomasney v. Klimowicz*, No. 09-CV-00952A(F), 2014 WL 12837762, at *8 (W.D.N.Y. July 17, 2014) ("Although Plaintiff argues his unlawful arrest and malicious prosecution claims as in violation of

municipalities. *See, City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.").  And, finally, the Amended Complaint fails to allege any actionable wrongdoing by COVAS.

Having now dismissed the foregoing claims and defendants, the remaining defendants are the Town of Cohocton and Hall and Waggoner in their individual capacities, and the remaining claims are the state law false arrest claim, the state law malicious prosecution claim, and the § 1983 Fourth Amendment claim based on false arrest and malicious prosecution.

<u>42 U.S.C. § 1983</u>

The Fourth Cause of Action purports to state a claim for civil rights violations under Section 1983.  Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09BCVB00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.

"False arrest and malicious prosecution are Fourth Amendment claims properly brought under § 1983.  To state a valid claim for false arrest or malicious prosecution

---

both the Fourth and Fourteenth Amendments, the Fourteenth Amendment is relevant to such claims only insofar as the Fourteenth Amendment's Due Process Clause makes the Fourth Amendment applicable to Defendants as state actors. Accordingly, because the Fourth Amendment provides an explicit textural source of constitutional behavior regarding arrests by law enforcement officials, and subsequent criminal prosecution on the charges for which the challenged arrests were made, Plaintiff's unlawful arrest and malicious prosecution claims are analyzed under the Fourth, rather than the Fourteenth, Amendment.") (citations and internal quotation marks omitted), report and recommendation adopted, No. 09-CV-952-RJA-LGF, 2016 WL 7403813 (W.D.N.Y. Dec. 22, 2016).

under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (citations omitted). [12]

To establish a Fourth Amendment claim based on either false arrest or malicious prosecution against a civilian, the plaintiff must show more than that the defendant reported information to the police:

> It is well settled in this State's jurisprudence that a civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution.  Nor does identifying plaintiff as the perpetrator of a crime, signing the summons or testifying at trial give rise to tort liability.

*Rowe v. City of Rochester*, No. 00-CV-6333 CJS, 2002 WL 31974537, at *12 (W.D.N.Y. Dec. 23, 2002) (quoting *Du Chateau v. Metro-North Commuter RR Co.*, 253 A.D.2d 128, 131, 688 N.Y.S.2d 12, 12 (1st Dept. 1999), citations omitted).

> To hold a private individual. . .  liable for false arrest under § 1983 and New York law, "a plaintiff must show that the defendant took an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff." *Lowmack v. Eckerd Corp.*, 303 A.D.2d 998, 757 N.Y.S.2d 406, 408 (2003) (alterations and internal quotation marks omitted). Liability may attach only when the defendant has "affirmatively induced the officer to act, such as taking an active part in the arrest and

---

[12] Defendants argue that Plaintiff has not plausibly pleaded a deprivation of liberty, but the Court disagrees.  At the pleading stage it is not difficult for a plaintiff to establish that he sustained a sufficient post-arraignment liberty restraint. *See, e.g., Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 216 (2d Cir. 2000) ("[I]n our view, Rohman has sufficiently demonstrated the requisite post-arraignment restraint of liberty. Specifically, Rohman alleged that he was required, as a condition of his post-arraignment release, to return to court on at least five occasions before the charges against him were ultimately dropped. In addition, we note that in New York, a criminal defendant released on his own recognizance, as Rohman was, must "render himself at all times amenable to the orders and processes of the court," N.Y.Crim. Proc. Law § 510.40, and therefore must ordinarily remain in the state. We conclude that these alleged limitations on his liberty, which as pleaded go beyond the fact of the arraignment itself, are enough, at least at the pleading stage, to implicate the Fourth Amendment.").

procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." *Curley v. AMR Corp.*, 153 F.3d 5, 13–14 (2d Cir.1998) (internal quotation marks omitted).

***

"When police independently act to arrest a suspect on information provided by a party, that party is not liable for false imprisonment [i.e. arrest]—even if the information provided is later found to be erroneous." *King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir.1997); *see also Quigley v. City of Auburn*, 267 A.D.2d 978, 701 N.Y.S.2d 580, 582 (1999). Thus, even if [a defendant] provided materially incomplete information to the [police, a] false arrest claim against him [could not] stand.

The standard under which a civilian may be held liable for malicious prosecution mirrors that just discussed for false arrest. A private defendant must have taken an active role in the prosecution, "such as giving advice and encouragement or importuning the authorities to act," to be found to have initiated a criminal prosecution as required for liability to attach. *Rothstein v. Carriere*, 373 F.3d 275, 293–94 (2d Cir.2004) (internal quotation marks omitted). Merely "reporting a crime to law enforcement and giving testimony" does not suffice. *Id*.

*Vlach v. Staiano*, 604 F. App'x 77, 78–79 (2d Cir. 2015).

Defendants here maintain that the Amended Complaint fails to plausibly plead that Defendants did anything more than provide truthful information to the police, and that they therefore cannot be held liable for false arrest or malicious prosecution. The Court agrees. In this regard, the pleading generally makes only bald assertions that "Defendants" made "false and misleading statements" to Logsdon, which led to Plaintiff's arrest and prosecution.[13] However, with one exception, which will be discussed further below, it is difficult to see how the statements that Hall and Waggoner made were at all false or misleading. Instead, the statements were essentially accurate and factual: Plaintiff intentionally destroyed and discarded backboard straps that did not belong to

---

[13] Am. Compl. at ¶ 29.

him, without anyone's permission.  Indeed, the Amended Complaint admits these facts, though it euphemistically downplays Plaintiff's actions by stating that he "rendered the weak straps unusable."[14]

The Amended Complaint does plausibly allege that Hall's supporting deposition contains one inaccuracy:  It asserts that Plaintiff did not have permission to be on the premises when he destroyed the straps, which is incorrect.[15]  However, that inaccuracy appears to be the result of using a stock affidavit form containing such boilerplate. Clearly, when viewed it its entirety, the purpose of Hall's affidavit was to establish the dollar value of the straps that were destroyed, not to establish that Plaintiff had been trespassing on the property.   More importantly, the error was insignificant since Plaintiff was not charged with trespassing.  Further, the statements from Demick and Waggoner both accurately note that Plaintiff was working as an EMT, and was therefore entitled to be on the premises, when he destroyed the straps, making it unlikely that Logsdon was misled on that point.  In sum, the pleading does not plausibly allege that Hall's single misstatement had any effect on Logsdon's decision to arrest Plaintiff and charge him with Criminal Mischief.

Nor does the Amended Complaint plausibly allege that Hall or Waggoner caused Plaintiff's arrest and prosecution by omitting relevant information, contrary to what Plaintiff claims.  In that regard, the pleading suggests that Hall and Waggoner misled Logsdon by failing to tell him that Plaintiff was authorized to inspect and replace the Town's ambulance equipment, and that Plaintiff had removed the straps because they were

---

[14] Am. Compl. at ¶ 22.
[15] As previously mentioned, the Town of Cohocton had contracted with Plaintiff's employer for the services of EMTs, including Plaintiff.

unsafe.  However, the pleading does not plausibly allege that Plaintiff actually had any authority to unilaterally decide what town ambulance equipment should or should not be used.  Moreover, Logsdon was clearly aware before the arrest that Plaintiff had purportedly removed the straps because he felt that they were unsafe.  Specifically, Demick indicated in her affidavit that Plaintiff had claimed the straps were unsafe to use,[16] and Plaintiff himself told Logsdon that the straps were unsafe.[17]

Plaintiff alternatively argues that Hall and Waggoner procured his arrest and prosecution by failing to inform Logsdon that Plaintiff had replaced the straps at his own expense.[18]  However, that contention is also not plausible.  To begin with, the pleading fails to allege *when* Plaintiff replaced the straps.  As already mentioned, the surveillance video shows Plaintiff destroy the straps and put the backboards away *without* replacing the straps.  Consequently, the Court cannot infer that Plaintiff replaced the straps before Hall and Waggoner made their statements to Logsdon.  Indeed, it seems much more plausible that Plaintiff replaced the straps after he was arrested and charged, since, otherwise, there would have been no reason for Plaintiff to use his own funds to replace supposedly defective equipment belonging to the Town of Cohocton.  In that regard, Plaintiff's alleged replacement of the straps at his own expense seems to be a tacit admission that he was not authorized to destroy them.[19]  In any event, Plaintiff's eventual replacement of the straps would not excuse his unauthorized destruction of them in the

---

[16]16ECF No. 19-3 at p. 3 ("[H]e thought the[y] were not suited to hold a heavy patient.").
[17] ECF No. 19-3 at p. 5 ("I broke the unsafe straps and threw them away.").
[18] *See*, Am. Compl. at ¶ 32 ("The Plaintiff proceeded to replace the straps with straps of better quality."); ¶ 35 ("At no time did agents of Defendants disclose that the Plaintiff replaced the materials at his own expense[.]").
[19] The pleading is also inconsistent on this point, since it alleges both that that Plaintiff himself replaced the straps and that he "requested that Paige Demick order new straps." Am. Compl. at ¶ 22. The reasonable inference is that Plaintiff may have initially requested that Demick order different straps, but after he was arrested he reasoned that it would be better for him if he replaced the straps himself.

first place.

Additionally, the pleading contends that Hall and Waggoner improperly influenced or misled Logsdon by failing to show him the surveillance video of the incident.  However, this claim is also not plausible, first, because it is entirely conclusory, and second, because the video is not exculpatory or inconsistent with the statements given to Logsdon.  Rather, the video shows Plaintiff doing exactly what Demick, Hall and Waggoner claimed that he did.  Accordingly, even assuming *arguendo* that no one showed Logsdon the video prior to Plaintiff's arrest, which seems highly unlikely, such failure would not make Hall or Waggoner liable for false arrest or malicious prosecution.

Finally, the pleading does not plausibly allege that Hall or Waggoner otherwise unduly influenced Logsdon's decision to arrest and charge Plaintiff.  Rather, the pleading and integral documents indicate that Logsdon investigated the matter over the course of two days (March 29th-30th), and that he arrested Plaintiff only after Plaintiff admitted that he had destroyed the straps.  Consequently, the reasonable inference is that Logsdon made the decision to arrest and charge Plaintiff of his own volition, based on his own independent investigation.  *See, Vlach v. Staiano*, 604 F. App'x at 78–79 (2d Cir. 2015) ("When police independently act to arrest a suspect on information provided by a party, that party is not liable for false imprisonment [i.e. arrest]—even if the information provided is later found to be erroneous.") (citation and internal quotation marks omitted); *see also, id*. at 79 ("When a criminal charge is the culmination of a lengthy investigation involving various sources of evidence, the mere fact that a witness provided false information to the government—as Vlach asserts Staiano did here—does not warrant a conclusion that the witness initiated the prosecution where the rest of the evidence suggests otherwise.");

*Charles v. Cty. of Nassau*, 116 F. Supp. 3d 107, 125 (E.D.N.Y. 2015) ("A third party may not be liable for false arrest if he merely reports a suspected crime, and the police act independently to investigate that crime.").

In sum, the Amended Complaint fails to plausibly allege that Hall or Waggoner either arrested Plaintiff, or initiated his prosecution, within the meaning of New York law, and, consequently, the pleading fails to allege actionable claims for false arrest, malicious prosecution, or a Fourth Amendment violation under Section 1983.  Accordingly, the remaining claims must be dismissed.

<u>The Amended Complaint Fails to Plead *Monell* Liability</u>

Even assuming *arguendo* that the pleading otherwise stated Fourth Amendment claims based on false arrest and malicious prosecution, it does not plausibly state a claim for municipal liability against the Town of Cohocton.[20]  To establish municipal or *Monell* liability under § 1983 relating to a constitutional violation committed by a municipal employee in the course of his employment, "a plaintiff must establish that action pursuant to official municipal policy caused his injury." *Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 855 (2d Cir. 2018) (citation and internal quotation marks omitted).

> Municipalities, and individuals sued in their official capacity, are liable under § 1983 only if the challenged conduct was pursuant to a municipal policy or custom, or caused by a failure to train. To satisfy *Monell*'s policy or custom requirement, a plaintiff must show either that the challenged practice was so persistent or widespread as to constitute a custom or usage with the force of law, or that the practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials. To establish municipal liability based on a failure to act, [such as a failure to

---

[20] Movants have not argued, and the Court does not address, whether Plaintiff has adequately pleaded respondeat superior liability, based on the actions of Hall and Waggoner, against the Town of Cohocton for the state-law torts if they were otherwise plausibly pleaded.

> train,] a plaintiff must show that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights.   A general and conclusory allegation of a municipal policy or custom fails to state a facially plausible *Monell* claim.

*Valdiviezo v. Boyer*, No. 17-1093, 752 Fed.Appx. 29, 31, 2018 WL 5096345 at *1 (2d Cir. Oct. 18, 2018) (citations and internal quotation marks omitted).

Here, the Amended Complaint does not explain the factual basis for Plaintiff's *Monell* claim, nor has Plaintiff directly responded to Defendants' argument for dismissal of the *Monell* claim.   Consequently, Plaintiff has arguably abandoned the *Monell* claim. However, Plaintiff's responsive brief contains one sentence that the Court will generously construe as a response on this point.   Namely, Plaintiff's brief states: "The police records relied upon by Defendants demonstrate that the decision to prosecute was urged by Waggoner and Hall and ultimately approved by the 'Town Supervisor.'"[21]   In this regard, to prove *Monell* liability, "a plaintiff can establish that his constitutional right was violated because of a single decision by a municipal official who is 'responsible for establishing final policy with respect to the subject matter in question.'" *Norton v. Town of Islip*, 678 F. App'x 17, 21 (2d Cir. 2017) (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).   The Court construes Plaintiff's statement above to mean that *Monell* liability here is premised on the alleged decision Town Supervisor to prosecute Plaintiff.[22]

However, this argument lacks merit.   To begin with, it is factually incorrect, since

---

[21] ECF No. 28 at p. 10.
[22] The Court will assume, for purposes of this discussion only, that the Town Supervisor has final policy-making authority.   The pleading does not plausibly allege that any defendant has such authority.

the facts contained in the pleading and integral documents do not indicate that the Town Supervisor made any decision to "prosecute" Plaintiff.   Rather, the affidavit from Waggoner merely states that upon seeing the video recording of the incident, the Town Supervisor asked that someone report the matter to the police. *See*, ECF No. 19-3 at p. 4 ("The Town Supervisor was contacted, who watched the video as well, and he requested that we call law enforcement.").   This is the only reference to the Town Supervisor.  No facts are alleged indicating that the Town Supervisor directed anyone to give false or misleading statements about Plaintiff's actions, or that he influenced Logsdon to arrest and charge Plaintiff,[23] and, as already discussed, merely reporting a potential crime to the police does not subject one to liability for false arrest or malicious prosecution.  The Amended Complaint therefore fails to plausibly allege *Monell* liability against the Town of Cohocton.

## CONCLUSION

Defendants' motions to dismiss (ECF Nos. 19 & 21) are  granted, and this action is dismissed.[24]  The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated: Rochester, New York
        May  17, 2021

ENTER:

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge

---

[23] There is no allegation that the Town Supervisor had any contact with Logsdon.
[24] Since the Court has found that the Amended Complaint must be dismissed for the reasons explained, it does not reach the additional grounds for dismissal raised by Defendants, such as statute of limitations, qualified immunity and governmental immunity.